JAMES F. COTTER and LORETTA M. COTTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cotter v. Commissioner
Docket No. 236-90
United States Tax Court
T.C. Memo 1991-316; 1991 Tax Ct. Memo LEXIS 368; 62 T.C.M. (CCH) 107; T.C.M. (RIA) 91316; July 9, 1991, Filed *368 Decision will be entered under Rule 155. Gerald A. Holmes, for the petitioners. Charlotte A. Mitchell, for the respondent. TANNENWALD, Judge. TANNENWALD
MEMORANDUM OPINION Respondent determined the following deficiencies in, and additions to, petitioners' Federal income taxes: Addition to Tax
Year
Deficiency
Sec. 6661, I.R.C. [1]
James F. and Loretta M. Cotter
1981
$  7,002
--  James F. Cotter
1982
[2] (none)
$  8,512
1983
24,723
70,341
1984
2,645
--  1985
4,100
--  After concessions, the sole issue for decision is whether respondent may recompute the amount of the tax credits allowable in prior years that are closed under the statute of limitations *369 in determining the correct amount of tax due from petitioners in respect of 1981. All of the facts have been stipulated, and the stipulation of facts and attached exhibits are incorporated herein by reference. At the time of the filing of the petition herein, petitioner James F. Cotter resided in Sebastopol, California, and petitioner Loretta M. Cotter resided in Bend, Oregon. During 1981, petitioners were husband and wife and timely filed a joint Federal income tax return for that year. After 1981, petitioners divorced, and petitioner James F. Cotter timely filed separate Federal income tax returns for 1982, 1983, 1984, and 1985. Petitioner James F. Cotter is the sole owner of Cotter Health Centers, Inc., a California corporation. For the years 1977 and 1978, petitioner and his wholly owned corporation claimed combined [3] new job credits of $ 108,878 and $ 197,270, respectively. On their 1980 Federal income tax return, petitioners reported that they had unused new job credits carried forward from 1977 and 1978 in the amount of $ 85,681. Petitioners' 1980 income tax return was audited during 1983, and it was determined that they had $ 18,214 of investment tax credits (ITC) *370 earned during 1980. Both the unused new job credits carried forward and the investment tax credit were applied to reduce petitioners' 1980 income tax liability on audit from $ 113,415 to $ 9,520. The parties now agree that the correct total combined amount allowable for the new job credits was $ 100,000 in each of these years and that there was no amount properly available for carryforward to 1980. During the course of auditing the returns for the 1981 through 1985 tax years, respondent determined that petitioners had disposed of various assets during 1980, 1981, 1982, 1984, and 1985, some of which were subject to the investment tax credit recapture provisions of section 47(a). Previously, for the years 1978 and 1979, petitioners claimed ITC in the total amounts of $ 10,297 and $ 15,743, respectively. For the 1981 tax year, respondent determined that additional ITC *371 recapture was due in the amount of $ 7,002. Of this amount, $ 6,667 arose from the sale during the year of used equipment from a facility known as Southern Manor [4] which was purchased during 1978 for $ 101,500. Total used assets purchased during 1978 were in excess of $ 240,000, of which $ 140,000 were sold during 1980 from a facility known as Big Springs. For 1978, investment tax credits on used equipment were limited under section 48(c) to $ 100,000 of equipment for a total credit available from used equipment of $ 10,000. For 1981, respondent determined that petitioners had a net operating loss in the amount of $ 35,002, available for carryback to prior years. The statute of limitations for assessment of a deficiency for the years 1977, 1978, 1979, and 1980 had expired at the time that respondent issued the notices of deficiency for the years 1981 through 1985. [5]
*372 In essence, the issue herein revolves around the correctness of respondent's determination of the recapture of ITC, which was claimed and used in 1978, from sale of the used equipment in 1981. Respondent asserts that a correct computation of all allowable credits in prior years results in no tax credit carryovers available to eliminate the $ 7,002 ITC recapture amount in respect of 1981. Respondent proposes to recompute the correct ITC for the years involved as follows: (1) The entire 1981 net operating loss of $ 35,002 is to be carried back to 1978; (2) because of the carryback, ITC originally claimed and used in 1978 in the amount of $ 10,297 is freed up to be carried forward to 1980; (3) the $ 10,297 ITC carried forward to 1980 is fully absorbed in that year because the new jobs credits incorrectly claimed and applied in 1980 should be disregarded. Petitioners, on the other hand, contend that the ITC recapture amount for 1981 should be eliminated by tax credits available for carryforward from prior years. Petitioners dispute respondent's recomputation and contend that the correct computation should be as follows: (1) During the 1983 audit for the year 1980, respondent did *373 not recapture $ 10,000 of ITC on the sale of $ 140,000 of equipment from the Big Springs facility which was purchased in 1978; (2) during the audit for the year 1980, respondent did not allow any ITC carryforward from 1978; (3) during the audit for the year 1980, respondent allowed the new jobs credit to reduce the deficiency for that year by $ 85,681; (4) respondent could have attempted to recapture for 1980 the $ 10,000 of ITC for used equipment purchased in 1978 on the sale of the Big Springs facility; (5) the statute of limitations has expired for the year 1980 and that the ITC recapture of $ 10,000 from the 1978 purchase is barred; (6) there was no absorption of investment tax credits on the purchase of Southern Manor that have been absorbed during 1980 that would have required recapture during 1981. We reject petitioners' argument that the ITC recapture in 1981 is improper because, according to respondent's recalculation, they were never allowed a credit for the $ 6,667 recapture amount against any previous "tax imposed" under section 1(a)(1). The effect of respondent's recalculation in allowing the $ 35,002 net operating loss in 1981 to be carried back to 1978 was to free *374 up the previously claimed and used ITC of $ 10,297 to be carried forward to 1980 and, in light of the fact that the new jobs credit carryforward was erroneously claimed and allowed for that year, had the effect of the ITC being applied against the "tax imposed" for 1980 and therefore constituted a "credit" allowed under section 38. See sec. 47(a). Therefore, this amount was not available for carryforward to 1981 to offset any ITC recapture for that year. Nor are petitioners entitled to rely on respondent's prior examination of their 1980 income tax return which did not require the 1978 ITC to be absorbed in that year, with the claimed result that the 1978 ITC credit was available for carryforward to 1981 and could be used to eliminate the ITC recapture for 1981. Such an assertion smacks of an allegation of estoppel and, although estoppel is available against respondent, it is well established that it should be applied against him with the utmost caution and restraint. Petitioners simply have not established the elements necessary for estoppel. Estate of Carberry v. Commissioner, 95 T.C. 65, 70 (1990), affd. F.2d (2d Cir., May 24, 1991); Boulez v. Commissioner, 76 T.C. 209, 214-215 (1981), *375 affd. 258 U.S. App. D.C. 90, 810 F.2d 209 (D.C. Cir. 1987). We hold that respondent's actions were merely to determine the correct tax due for 1981, a year open under the statute of limitations, by computing the correct amount of credits to be allowed in barred years. We have long held that, in determining the correct tax liability for an open year, section 6214(b) does not prevent computing, as distinguished from "determining," the tax liability for a barred year. Hill v. Commissioner, 95 T.C. 437, 439 (1990); Lone Manor Farms, Inc. v. Commissioner, 61 T.C. 436, 440-441 (1974), affd. in an unpublished opinion 510 F.2d 970 (3d Cir. 1975). In particular, we have held that respondent can recompute the amount of an unused investment credit carryforward from a barred year in order to determine the tax due for any open year. Hill v. Commissioner, 95 T.C. at 440; Mennuto v. Commissioner, 56 T.C. 910, 923 (1971). Petitioners' attempt to distinguish the instant case on the ground that, in those cases, respondent "disallowed" the investment tax credit in respect of the barred year while the ITC herein *376 was "never allowed' reflects a meaningless semantical exercise. We also fail to see the relevance of petitioners' assertion that, pursuant to the provisions of section 1.47-3(d), Income Tax Regs., there was no reselection of used section 38 property equipment made during the examination of their 1980 income tax return. This regulation permits the taxpayer to treat the cost of any used section 38 property that was not originally selected in computing the investment tax credit for a given year as having been selected in place of the cost of the originally selected property and, notwithstanding any disposition or cessation of the originally selected section 38 property, provides that there will be no ITC recapture to the extent of the cost of the newly selected used section 38 property. There is no evidence in the record to indicate that petitioners made any reselection of property in 1980 for used section 38 property disposed of in that year, as required by section 1.47-3(d)(3)(i) and (ii), Income Tax Regs. Nor is there any obligation on the part of respondent to make such a reselection. The fact that the 1980 audit appeared to make such reselection unnecessary is not, in and of *377 itself, a sufficient answer. Petitioners further argue that, even if respondent is correct in his position, the credit recapture in 1981 should be limited to the allocable portion of the 1978 ITC representing the ratio of the 1978 purchases disposed of in 1981 ($ 101,500) over the total purchases disposed of during 1980 and 1981 ($ 241,500). Petitioners cite no authority for their position, nor have we found any from our independent research. We think this is simply another articulation designed to prevent respondent from recalculating petitioners' ITC carryforward from 1978 in accordance with the decided cases. In sum, petitioners in fact received investment tax credits in respect of the purchase of property in a barred year which was sold in 1981, and we see no reason why they should in effect be given a double credit by permitting the carryforward of the new jobs tax credit, which was erroneously allowed for an earlier year and from which petitioners benefitted, to offset the tax due on the recapture for a year not barred by the statute of limitations. To reflect concessions, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. A deficiency was determined for the 1982 year which was absorbed by a net operating loss carryback from 1984.↩
3. The stipulation is silent as to the basis for combining these credits, e.g., whether Cotter Health Centers, Inc., was a subchapter S corporation.↩
4. The remaining $ 335 represents the recapture of the investment tax credit in respect of other equipment and is not disputed by petitioners.↩
5. Here we note that, in their petition, petitioners raised the affirmative defense of the expiration of the statute of limitations for the tax years 1981 through 1985. However, in his answer, respondent attached copies of executed consents to extend the statute of limitations for the tax years 1981 through 1984 and pleaded the absence of the bar of the statute of limitations for 1985. As petitioners have not subsequently addressed this issue, we deem it conceded or abandoned.↩